LANGNESS, Appellant, *v.* PETTIGREW, Respondent.

**1. Waters and Water-Courses — Evidence—Apparent and Efficient Head.**

In an action for damages in exceeding a right to construct a dam for a water-power of a certain number of feet head, where the difference at the trial was the method to be employed in measuring the number of feet head, the distinction between the general or apparent and the efficient head of water-power is immaterial; it appearing no such distinction was known or recognized at the time of the grant between the parties.

**2. Same—Special Finding—Instructions.**

In an action for overflowing lands in excess of a grant to construct a "dam to be for a water-power of eight feet head," where the differ-

ence at the trial was the method of measuring the number of feet head, — whether it was by taking the difference between the water level above the dam and that below in the tail-race under the wheel, when the water was quiet, and the mill not in operation, or when it was running,—the question for a special finding: "At an ordinary stage of water, was there more than eight feet difference between the level of the water in the pond above the mill-wheel and the level of the water below the mill-wheel in the race, while the mill is in operation?"—is proper and material. It did not have the effect of instructing the jury to ascertain the number of feet head by one method, when the court in its charge called attention to both, and told them they were to ascertain the proper one from the evidence before them.

**3. Same—Trial.**

In an action for damage in having exceeded a right to construct a "dam * * * eight feet high from a certain rock at the edge of the river where the dam crosses," it was proper to submit to the jury, for a special finding of fact, the question: "Was the dam erected more than eight feet high from the point of the rock designated in the deed?" It did not inform them "the point of the rock" from which to make the measurement, though none was named in the deed.

(Argued May 11, 1887; affirmed May 26; opinion filed February 14, 1888.)

Appeal from the district court of Minnehaha county; Hon. C. S. PALMER, Judge.

*Wynn & Young,* for appellant.

Two material issues were made by the pleadings:

1. Had the defendant, Pettigrew, built a dam in a manner that exceeded the restriction in the deed?

2. Were the lands of the plaintiff, Langness, overflowed and damaged by reason of the defendant building a mill-dam in a manner exceeding said restriction?

In addition to this, it appears by the record the construction of the clause in the deed was a subject of controversy.

The court erred in excluding the testimony of R. S. Alexander as to the difference between the general and efficient head of water-power.

The main question is the proper method of determining the number of feet head of water-power. It appears by the evidence two distinct modes of determining this were urged on the trial.

It appears that there is a difference between the general and efficient head. This witness states that he can explain the difference, and his competency is shown. "A contract may be explained by reference to the circumstances under which it was made and the matter to which it relates." C. C. § 938.

The actual and efficient water head also varies. Plaintiff's witnesses testify to the general head of water-power as shown by the height of the dam. Now, was it the general or efficient water-power that was contemplated in the deed in question, and which rule of measurement should be applied in this case? The court would not permit plaintiff to show the difference between the two. It is only by evidence of this character that the jury could intelligently and justly ascertain the true principle of measurement to be applied.

The appellant further insists that there was error in the submission of the special findings to the jury.

The questions were objectionable in form. The first was limited to an ordinary stage of water, and there was nothing in the evidence by which the jury could find the number of feet head of water-power at an ordinary stage of water, except in the evidence of defendant's witness. By the plaintiff's theory and mode of measurement the number of feet head of water-power would be the same at any stage of water. The limitation in the question, "at an ordinary stage of water," was suggestive at once of the defendant's theory of measurement.

Again, the second question was objectionable in form. "Was the dam more than eight feet from the point of the rock designated in the deed from Langness to Pettigrew?"

No point of a rock was designated in said deed. The controverted clause is as follows: "Said dam to be for a water-power of eight feet head, or eight feet from a certain rock at the edge of the river where the dam crosses."

The first question was not pertinent or material to any of the issues, and could determine no issuable fact.

The serious error in submitting this question to the jury was that it instructed them to ascertain the number of feet head

of water-power by the mode of measurement urged by the defendant.

Its submission to the jury was material error, as its effect. would be to press upon their minds the mode of measurement. urged by the defendant, and that it was the correct one. *Hawley* v. *Chicago, B. & Q. R. Co.*, 29 N. W. Rep. 87.

An instruction which assumes as correct one of two aspects. of the case, upon which there is conflict in testimony, or which gives prominence to certain facts, ignoring other facts of equal importance, is erroneous. *Watson* v. *Gray*, *43 N. Y. 385;. *Le Roy* v. *Park F. Ins. Co.*, 39 N. Y. 56; *Downs* v. *Sprague*, *41. N. Y. 57; *Calef* v. *Thompson*, 81 Ill. 478; *Westchester F. I.. Co.* v. *Earle*, 33 Mich. 143; *Jones* v. *Jones*, 57 Mo. 138.


*L. S. Swezey*, for respondent.


The inquiry of the witness Alexander was not upon any point in issue, and is irrelevant, incompetent, and immaterial. It is. much involved and complicated. It includes the descriptive words "general," "apparent," "efficient" head of water-power.. "General" means (1) pertaining to a class or order; (2) comprehending many things or persons; (3) not restrained or limited to any precise import, not specific, lax in signification,—as a general expression. "Apparent" means (1) capable of being seen, visible to the eye, within sight or view; (2) appearing to the view, but not real. "Efficient" means causing effects, producing results, operative. Webster.

The party could not be prejudiced by a ruling of the court. concluding such an inquiry. And there was no offer or explanation to show by such inquiry what was expected or proposed to be proved.

The form of the special verdict was in accord with the evidence and the law of the case.

The suggestion of counsel that the second question submitted to the jury is objectionable in form, in the words, "point of the rock," is not well made; for all the evidence on the subject of:

the rock designated in the deed, on both sides, tends to explain
and make certain the point of the rock mentioned in the deed,
and there is no dispute about that.

The other objections to the submission of those questions may
be considered together.   They seem to be predicated on the the-
ory that the mere submission of a question to the jury, to be
answered "yes" or "no," is in the nature of an instruction or
direction to the jury; in effect is a sort of duress "upon their
minds," as argued by counsel.   This is a misapprehension, or
a misstatement of the matter.

We have examined the cases cited by counsel on this subject,
and do not find them authority against the action of the court.

THOMAS, J.   This is an action for damages.   The complaint
alleges that on the 26th of October, 1882, the plaintiff and his
wife conveyed by deed to the defendant a small piece of land
in Minnehaha county, describing it; and also the right to con-
struct a dam upon or below the land thus conveyed for a water-
power, and the right to flow or set back the water upon certain
other lands of the plaintiff; "said dam to be for a water-power
of eight-foot head, or eight feet high from a certain rock at the
edge of the river where the dam crosses."   The complaint fur-
ther alleges that about the middle of December, 1882, the de-
fendant constructed a dam at the point designated, but wrong-
fully constructed said dam to the height of nine feet ten inches,
or so as to afford a water-power of nine feet ten inches head,
thereby overflowing and damaging large tracts of plaintiff's
lands, the which would not have been done had the dam been
erected as provided in the deed; for which plaintiff claims dam-
ages to the sum of $4,000.

The answer admits the execution and delivery of the deed,
but alleges that all of the overflow and damage, if any, claimed
by plaintiff, were the necessary and lawful result of the build-
ing of said dam pursuant to the deed; and further alleges that
the cause of action did not accrue within two years from the
commencement of the suit.   The case was tried to a jury be-
v.5DAK —4

low, and a verdict returned for the defendant, upon which judgment was rendered by the court dismissing the complaint, and for defendant's costs; to reverse which the appellant prosecutes this appeal.

Ten errors are set out in the record, only two of which are noticed in the brief of appellant, which are the only ones we deem it necessary to consider.

As stated in the brief of counsel for appellant, there are only two material issues of fact presented by the pleadings, to-wit: *First*, did the defendant's dam exceed or violate the grant as contained in the deed? *Second*, were the plaintiff's lands damaged by overflow by reason of such violation?

By the terms of the grant, the defendant had a right to build a dam for a water-power of eight-feet head, or eight feet high from a certain rock in the edge of the river where the dam crosses. As we have heretofore stated, appellant seeks a reversal of the judgment herein, upon two grounds, to-wit:

*First*, because the court below erred in excluding the testimony of R. S. Alexander, as to the difference between the general or apparent head of water-power, and the efficient head of water-power; *second*, the court erred in submitting the special findings to the jury.

It will be observed that the language of that clause in the deed granting the right to construct a dam of a given character is in the alternative, and upon the trial there seems to have been no dispute as to the right of defendant to choose whether his dam should be confined to a height of eight feet above a certain rock in the edge of the river, or whether it should be so built as to afford him a "water-power of eight-feet head," even though by so doing the dam should exceed the height of eight feet.

The question, as stated in appellant's brief, about which counsel most seriously differed on the trial below, was, what was the proper method of ascertaining the number of feet of head of water-power afforded by the dam? The plaintiff contended that the difference between the level of the water above the

dam and the level of the water below, or in the tail-race below the wheel when the water is quiet and the mill not in operation, was the correct rule of its ascertainment. The defendant insisted for the same rule, with the modification that the difference between these two levels of water should be measured when the mill is in operation.

To these two different methods of measurement much of the testimony was directed by the parties, respectively.

M. A. Stickney, one of the plaintiff's witnesses, stated that he had had many years of experience in mills run by water-power, and knew the usual mode of determining the number of feet head of water, and that it was determined by taking the difference between the level of the water directly above the dam and the level in the tail-race below the wheel when the water is quiet and the mill not in operation.

E. P. Adams, one of the defendant's witnesses, testified that he had had a good deal of experience in mills, and knew the proper mode of estimating the number of feet head of water-power, and that it was found by taking the difference between the level of the water in the pond above the dam and the level of the water below the wheel when the mill is in operation.

Other testimony was given to the same effect, and thus it will be observed that the jury had before them these two different modes of ascertaining the number of feet head of water-power; and it is admitted by appellant's counsel in their brief that these two modes of measurement give different results; and that, if the method contended for by defendant was adopted as the proper mode of determining the number of feet head of water-power, it would necessarily decide the case in defendant's favor, and *vice versa,* if the mode contended for by plaintiff was adopted.

Appellant's counsel urge as error the refusal of the court below to permit them to show, by one of plaintiff's witnesses, the "difference between the general or apparent head of water-power and the efficient head of water-power;" an objection to

this testimony by counsel for defendant having been sustained by the court.

Was this error? In what way was this testimony material to the issues being tried? What light could its answer throw upon the question as to the proper method of measurement of the head of water-power afforded by defendant's dam? It nowhere appears that, at the time the deed was executed by the plaintiff, or at any time afterwards, any distinction was known or recognized between the general or apparent and efficient head of water-power. No reason is given or shown for attempting to elicit this information. The terms "general or apparent" have no necessary or natural connection with the subject. They are indefinite, confusing, and much involved, and immaterial to the question being presented to the jury. It was the actual or efficient head of water-power of this dam that was the subject of investigation upon the trial. There appears no reason anywhere in the record for confining the defendant to the "general or apparent head of water-power" in the erection of his dam. The language of the deed, the evidence, and the facts in this case, fail to show any such intention on the part of either of the parties. It seems to us from the very nature of the grant, and ultimate purpose for which the dam was to be used, it was certainly the actual and efficient head of water-power which was intended to be conveyed,—not the "general or apparent" water-power. It is not the "general or apparent head of water-power" that turns the wheel of the mills, but the actual and efficient head of water-power that does the work. Why not as well seek for the estimated or supposed head of water-power? The objection to the introduction of this evidence was properly sustained.

The remaining reason urged by counsel for appellant for reversal of the judgment herein is the submission by the court to the jury of two special findings, to-wit:

"(1) At an ordinary stage of water, was there more than eight feet difference between the level of the water in the pond above the mill-wheel and the level of the water below the mill-wheel in the race while the mill is in operation?

"(2) Was the dam erected more than eight feet high from the point of rock designated in the deed from Langness to Pettigrew?"

The first question was answered by the jury in the affirmative. The appellant's counsel insist that these questions were objectionable in form; that the first question was not material, and that it virtually instructed the jury to ascertain the head of water-power by the mode of measurement urged by the defendant; and the effect upon the jury was to impress upon them this mode as the correct one. This might seem somewhat plausible, were it not for the fact that the court in its charge called especial attention of the jury to the two different methods contended for by the parties, and told them that they were to ascertain the proper method from the evidence before them.

How can it be said that this question was immaterial? It presented one of the very questions of fact which the jury were trying to ascertain, and the submission of a particular question of fact to the jury did not amount to an instruction by the court that this was the law of the case on that point. The court had a right to submit it to the jury. Code Civil Proc. § 261.

The objection to the second question goes to the form, by reason of the fact that reference is made therein to "the point of the rock," because no point of a rock was designated in the deed. The words in the deed are "eight feet high from a certain rock." This rock is shown by the testimony to have length, breadth, and thickness in common with all rocks, and an uneven surface on top, and from some point on this surface the measurement of the height of the dam was to be made, as shown by the evidence. That point was for the jury to find, if necessary; and the mere insertion of the words "a point of the rock" did not tell them what point of the rock, but left it for the jury to say what part or point of the surface of the rock was the proper one from which to make the measurement. We find no error in this case. The judgment is therefore affirmed.

All the justices concurring.